UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| SPECIFIC SOFTWARE SOLUTIONS, LLC, ) | |
| ) | |
| Plaintiff, ) | Case No. 3:09-0112 |
| ) | Judge Trauger |
| v. ) | |
| ) | |
| INSTITUTE OF WORKCOMP ADVISORS, LLC, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM

Pending before the court is a Motion to Dismiss (Docket No. 5) filed by defendant Institute of WorkComp Advisors ("the Institute") to which the plaintiff, Specific Software Solutions ("Specific Software") has responded (Docket No. 12). For the reasons discussed herein, this motion will be granted.

## FACTUAL AND PROCEDURAL BACKGROUND

The plaintiff, Specific Software, is a Tennessee LLC that assists professionals in managing and understanding issues that regularly arise in the field of worker's compensation.[1] Specific Software maintains a content-rich website that features topics and information of interest to professionals in the field of worker's compensation. The defendant, the Institute, is a North Carolina LLC and is comprised of four members, namely, Preston Lee Diamond, Karla Epperson Diamond, Frank M. Pennachio, and Sherry Pennachio. The Institute performs a similar service to that performed by Specific Software and maintains training manuals and

---

[1] Unless otherwise noted, the facts are drawn from the Complaint (Docket No. 1).

1

materials with information of interest to professionals in the field of worker's compensation. The Institute also maintains a website with similar information.

The Institute and Specific Software have a history of working well together. Indeed, Specific Software created its website with some input from Mr. Pennachio (of the Institute) pursuant to a 2007 consulting agreement between Mr. Pennachio and Specific Software. Sometime after this agreement was signed, however, Mr. Diamond and Mr. Pennachio (both of the Institute) had a falling out, which negatively affected the good working relationship between the Institute and Specific Software.

On November 12, 2008, on behalf of the Institute, Mr. Diamond wrote a cease-and-desist letter to Timothy Coomer (CEO of Specific Software), which alleged that Specific Software, primarily through its website, had generally infringed on the Institute's copyrights. (Docket No. 1 Ex. C.) On November 20, 2008, Specific Software's counsel responded, seeking specific examples of copyright infringement. (Docket No. 1 Ex. D.) In that letter, among other things, Specific Software's counsel noted that its search of the records of the United States Copyright Office revealed that the Institute did not have any registered copyrights. (*Id.*)

On December 29, 2008, counsel for the Institute responded, stating that "registration of the copyright is not a precondition for the basic underlying protection. However, in order for a copyright owner to sue for infringement, it must register the copyright or file an application for registration, depending on the circuit in which the suit is filed." (Docket No. 1 Ex. E.) This letter further advised Specific Software that the Institute had filed four copyright registration applications for "works created by employees of the Institute" and, while "the copyrights associated with those applications have not yet been registered, ... we anticipate registration

shortly." (*Id.*) The letter also advised that, if Specific Software sought specific examples of infringement, its representatives should sit down with Mr. Pennachio and compare the materials on Specific Software's website with the Institute's materials, which were in Mr. Pennachio's possession. (*Id.*)

On January 12, 2009, after a discussion between Mr. Pennachio and representatives from Specific Software, Mr. Pennachio wrote Coomer a letter stating that Specific Software's materials did *not* infringe on the Institute's copyrights. (Docket No. 1 Ex. F.) On January 14, 2009, Specific Software's counsel forwarded Mr. Pennachio's letter to the Institute's counsel (1) pointing out that a principal from the Institute had just written Specific Software a letter stating that there was no infringement and (2) arguing that, in light of this letter, this matter should be considered closed. (Docket No. 1 Ex. G.) In a January 21, 2009 response, the Institute's counsel claimed that Mr. Pennachio was not correct, and counsel also claimed that the Institute had identified, through a review of Specific Software's website, thirty-three specific examples of willful copyright infringement. (Docket No. 1 Ex. H.) The Institute threatened to take "appropriate legal action" if Specific Software did not remove the allegedly offending material from its website within ten days. (*Id.*)

On February 4, 2009, Specific Software filed this lawsuit asserting that the Institute had "threatened litigation against Specific Software based on unwarranted assertions that Specific Software has allegedly infringed the Institute's copyrights." (Docket No. 1 at 2.) Specific Software's Complaint seeks multiple declaratory judgments, but all of these proposed judgments would find, for various potential reasons, that Specific Software's materials did not infringe on

3

copyrights held by the defendant.[2]  (*Id.*)  Indeed, Specific Software seeks a judgment that it "does not infringe any of the Institute's asserted copyrights" and that the copyrights at issue are invalid.  (*Id.* at 6.)  On March 24, 2009, the Institute moved to dismiss this case, arguing that, because its copyrights were not "registered," this court does not have the power to hear this copyright infringement suit.

## ANALYSIS

The defendant has moved to dismiss this declaratory judgment action, because, the defendant argues, the court cannot hear this matter because the copyrights at issue have not been "registered" by the U.S. Copyright Office.  While the defendant captions its motion as a Federal Rule of Civil Procedure 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted, other district courts in this circuit have indicated that, when the defendant seeks to dismiss a copyright infringement action because the copyrights at issue have not been registered, the proper vehicle is a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction.  *See Teevee Toons, Inc. v. Overture Records*, 501 F. Supp. 2d 964, 967 (E.D. Mich.

---

[2] Along with a declaratory judgment of non-infringement, as additional "cause(s) of action and ground(s) for relief," Specific Software seeks a declaratory judgment that the asserted copyrights are (1) "invalid" generally; (2) are "invalid for lack of original expression"; and (3) are "unenforceable for lack of original expression."  (*Id*. at 4-5.)  Further, Specific Software also seeks a declaratory judgment that the materials at issue were not "strikingly similar," that any similarity "is derived from documents in the public domain that did not originate with either [party]," that any similarly consists of "titles, names, short phrases, slogans, familiar symbols or designs" or "ideas, procedures, methods, systems, processes, concepts, principles, discoveries, or devices, as distinguished from a description, explanation, or illustration."  (*Id*.)  Also, Specific Software seeks a declaratory judgment that any similarity "consists of information that is common property and containing no original authorship taken from public documents or other common sources." (*Id.*)  Finally, Specific Software seeks a declaratory judgment that any similarity between the relevant materials is "*de minimus*." (*Id*.)  As the defendant puts it, "these declarations and the grounds for relief all would be used to establish a defense to a copyright infringement suit."  (Docket No. 6 at 1.)

4

2007); *Hawaiian Village Computer, Inc. v. Print Management Partners, Inc.*, 501 F. Supp. 2d 951, 954 (E.D. Mich. 2007). The court agrees with this characterization and, therefore, the court will analyze this issue under the Rule 12(b)(1) standard.

## I.     Motion to Dismiss - Rule 12(b)(1)

Federal Rule of Civil Procedure 12(b)(1) governs dismissal of lawsuits for lack of jurisdiction over the subject matter. The "first and fundamental question presented by every case brought to the federal courts is whether it has jurisdiction to hear a case." *Douglas v. E.G. Baldwin & Assoc., Inc*, 150 F.3d 604, 606-07 (6th Cir. 1998). When challenging a court's subject matter jurisdiction under Rule 12(b)(1), a defendant may either facially attack the plaintiff's complaint by testing the sufficiency of the pleading itself, or the defendant may "factually attack" the complaint, that is, argue that the existence or non-existence of certain facts deprives the court of subject matter jurisdiction. *See Smith v. Northwest Airlines, Inc.*, 141 F. Supp. 2d 936, 939-40 (W.D. Tenn. 2001). Because the essential facts are not in dispute, resolving whether the defendant's motion is a "facial" or "factual" attack is not necessary to decide this case; that said, an argument that the court does not have subject matter jurisdiction because the U.S. Copyright Office has not "registered" the copyrights at issue appears to be a factual attack. In "considering a factual attack upon the court's jurisdiction, no presumption of truth applies to the plaintiff's factual allegations, and the court is free to weigh the evidence and resolve factual disputes so as to satisfy itself as to the existence of its power to hear the case." *Giorgadze v. Tennessee Technology Center*, 2007 WL 2327034, *2 (E.D. Tenn. Aug. 10, 2007) (citing *U.S. v. Ritchie*, 15 F.3d 592, 598 (6th Cir. 1994)).

5

## II. The Registration Issue

The central dispute in the parties' briefing is whether the Institute's copyrights have been "registered." In pertinent part, the Copyright Act states, "[N]o civil action for infringement of the copyright in any United States work shall be instituted ... until registration of the copyright claim has been made in accordance with this title." 17 U.S.C. § 411(a). Additionally, the Sixth Circuit has concluded, "[w]ith very limited exceptions ... registration is a prerequisite to filing a copyright infringement suit." *Murray Hill Publications, Inc. v. ABC Communications, Inc*., 264 F.3d 622, 630 (6th Cir. 2001). Neither party argues that any such limited exception to the jurisdictional requirement of registration is applicable here.

Further, there is no dispute that, to obtain "registration," an entity with something that it believes is copyrightable must send an application, the deposit (the material to be copyrighted), and a fee to the U.S. Copyright Office. 17 U.S.C. § 411(a). The plaintiff argues that, at this point, the material has been "registered," and, therefore, an infringement action may proceed. (Docket No. 12 at 3.) The defendant argues that registration occurs later, after the Copyright Office has passed (one way or another) on the copyrightability of the material at issue. (Docket No. 6 at 4.) The defendant argues that, here, because the Copyright Office has not passed on the copyrightability of the material at issue, the material has not been registered and a copyright infringement action based on that material cannot be heard by this court. (*Id.* at 7.)

The Sixth Circuit has not decided what constitutes "registration" for purposes of this provision. While there has been a split of opinion amongst district and circuit courts about what constitutes registration in this context, three recent decisions of fellow district courts in the Sixth Circuit have all found that registration is only accomplished once the Copyright Office passes

6

(one way or another) on the material submitted by the applicant.[3] *See Teevee Toons*, 501 F. Supp. 2d at 967-68; *Hawaiian Village Computer*, 501 F. Supp. 2d at 954; *Ripple Junction Design Co. v. Olaes Enters.*, 2005 WL 2206220, *3 (S.D. Ohio September 8, 2005). This is known as the "registration" approach, or, as the plaintiff puts it, the "narrow" approach. (Docket No. 12 at 13.)

These cases (and many others like them) rely primarily on the plain language of the Copyright Act, which, in various provisions, clearly indicates that the jurisdictional prerequisite of registration does not occur until after the Copyright Office has passed (one way or another) on the copyrightability of the material at issue. First, Section 410(a) states, "[w]hen, after examination, the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited constitutes copyrightable subject matter and that the other legal and formal requirements of this title have been met, the Register shall *register* the claim and issue to the applicant a *certificate of registration* under the seal of the Copyright Office." 17 U.S.C. § 410(a) (emphasis added).

Additionally, Section 411(a) states, "where the deposit, application, and fee required for registration have been delivered to the Copyright Office in proper form and *registration has been*

---

[3] For examples of the split of opinion, *see Apple Barrel Prod., Inc. v. Beard*, 730 F.2d 384, 386 (5th Cir.1984) (in order to establish standing, plaintiff only need show the payment of a fee, deposit of the work in question, and receipt by the Copyright Office of the registration application); *Iconbazaar, L.L.C. v. America Online, Inc*., 308 F.Supp.2d 630, 633-34 (M.D. N.C. 2004) (same) (collecting cases identifying split of authority); *La Resolana Architects, PA v. Clay Realtors Angel Fire*, 416 F.3d 1195, 1200-01 (10th Cir. 2005) ("[O]nly upon registration or refusal to register is a copyright holder entitled to sue for copyright infringement under § 411."); *Marshall & Swift v. BS & A Software*, 871 F.Supp. 952, 957-58 (W.D. Mich. 1994)(application for copyright registration is insufficient to satisfy condition precedent to jurisdiction; plaintiff must obtain certificate of registration before filing suit)*; Loree Rodkin Mmgt. Corp. v. Ross-Simons, Inc*., 315 F.Supp.2d 1053, 1054-56 (C.D. Cal. 2004) (same).

7

*refused*, the applicant is entitled to institute a civil action for infringement if notice thereof, with a copy of the complaint, is served on the Register of Copyrights." 17 U.S.C. § 411(a) (emphasis added). Further, Section 410(b) states that, in "any case in which the Register of Copyrights determines that, in accordance with the provisions of this title, the material deposited does not constitute copyrightable subject matter or that the claim is invalid for any other reason, the Register shall *refuse registration* and shall notify the applicant in writing of the reasons for such refusal." 17 U.S.C. § 410(b) (emphasis added).

Based on this framework, the defendant argues that, as a "matter of straightforward statutory construction," the logical conclusions are that Congress intended to differentiate the application from the "registration," and that Congress intended for the Copyright Office to have a full opportunity to review the merits of a copyright application before the courts would be allowed to weigh in. (Docket No. 6 at 5 quoting and citing *Ripple Junction*, 2005 WL 2206220 at *3.) As the *Ripple Junction* court stated, "if a party could file an infringement suit merely upon filing his application for registration, there would be no need to include a provision stating that a suit can be maintained after the application is refused." 2005 WL 2206220, at *4. In sum, the defendant argues, "Congress did not contemplate the filing of an infringement action while an application was pending, but instead made clear that registration does not occur until the Copyright Office has reviewed and decided the merits of the application." (Docket No. 6 at 4.)

The plaintiff makes two main arguments in response. First, the plaintiff argues that Section 411(a), which requires registration before a "civil action for infringement" may be filed, is "inapplicable to the present case because plaintiff has not alleged copyright infringement." (Docket No. 12 at 1.) In support of this position, the plaintiff cites two cases in which a court

exercised jurisdiction over a declaratory judgment action that sought to resolve the litigants' Copyright Act rights *vis a vis* copyright material that was unregistered. (Docket No. 12 at 8 citing *De Sylva v. Ballentine*, 351 U.S. 570 (1956); *Surbella v. Foley*, 2007 WL 641968, *3-4 (S.D. Ohio Feb. 23, 2007)).

Neither case appears particularly similar to the case before the court. Indeed, *De Sylva* considered a unique copyright renewal issue, specifically whether an illegitimate "child [of a deceased copyright holder] is entitled to share in the copyrights which come up for renewal during the widow's lifetime." 351 U.S. at 572. In *Surbella*, the plaintiffs alleged that their computer system had been "hijacked" by the defendants and that their property (information on the system) had been stolen. The plaintiffs sought a declaratory judgment, under the Copyright Act, that they were entitled to exclusive use of the system. 2007 WL 641968, at *3. The *Surbella* court concluded that the case could move forward, despite the registration requirements contained in Section 411(a), because of the lack of connection between the allegations and a claim of copyright infringement. *Id.*

Here, unlike in *De Sylva* and *Surbella*, the issue of copyright infringement is central to the plaintiff's declaratory judgment action, and, therefore, these cases are not particularly useful to the court in analyzing the issues. Helpfully, the defendant points to the *Stuart Weitzman, LLC v. Microcomputer Res. Inc.*, 542 F.3d 859 (11th Cir. 2008) case, which is much more on point. At issue in *Weitzman* was whether the plaintiff's use of a computer program infringed on the defendant's copyrights. *Id.* at 861. There was no dispute that the copyrights at issue had not been registered (no applications had been submitted). *Id.* at 863. The plaintiff sought a declaratory judgment that it was the rightful owner of its computer program, and that it could

9

use, maintain and modify the software without infringing the defendant's copyrights. *Id.* at 861.

The *Weitzman* court concluded that, because there had been no registration of the copyrights at issue, the defendant would not be able to maintain a copyright infringement action against the plaintiff. *Id.* at 863. It followed, the court concluded, that if the defendant could not maintain a Copyright Act action for infringement, the plaintiff could not assert a Declaratory Judgment Act claim of "non-infringement." Indeed, the court stated, "because the Declaratory Judgment Act cannot, of itself, confer jurisdiction upon the federal courts, and because [the defendant] could not sustain an infringement action in federal court, we hold that such a hypothetical coercive action cannot provide the district court with subject matter jurisdiction over [the plaintiff's] declaratory suit." *Id.* In sum, the *Weitzman* court concluded that, where the "most logical reading" of the plaintiff's declaratory judgment complaint would reveal that the plaintiff "anticipates a copyright infringement suit," the declaratory judgment suit is governed by the jurisdictional prerequisite of registration to the same extent as if the defendant had asserted a claim of copyright infringement. *Id.* at 863.

Plainly, as discussed above, this declaratory judgment action was filed because the plaintiff "anticipates a copyright infringement suit." Indeed, Specific Software filed this lawsuit asserting that the Institute had "threatened litigation against Specific Software based on unwarranted assertions that Specific Software has allegedly infringed the Institute's copyrights." (Docket No. 1 at 2.) The logic of *Weitzman* is sound and commands the fair result, which is that neither side can sue to resolve the issue of infringement until the relevant materials have been registered consistent with Section 411(a) of the Copyright Act. Therefore, the fact that the plaintiff seeks a declaratory judgment does not remove this case from the purview of Section

10

411(a).

The plaintiff's next argument, appropriately, assumes that Section 411(a) is applicable, but it argues that "registration" occurs when the applicant submits the fee, deposit and application. (Docket No. 12 at 2.) The plaintiff correctly points out that there is no binding Sixth Circuit precedent as to how "registration" under Section 411(a) should be defined. (*Id.*) The plaintiff encourages the court to "adopt sound policy" and embrace what it terms the "broad" approach, also known in the case law as the "application approach," which concludes that registration is complete (and the court has jurisdiction over a copyright infringement action) once the application, fee, and deposit are submitted to the Copyright Office. (*Id.* at 3.)

The plaintiff argues that the analysis in *Hawaiian Village* and in other similar cases that adopt the "narrow" approach is "flawed." (Docket No. 12 at 11.) In support of this position, the plaintiff points to Section 410(d), which states that the "effective date of a copyright registration is the day on which an application, deposit, and fee, which are later determined by the Register of Copyrights or by a court of competent jurisdiction to be acceptable for registration, have all been received in the Copyright Office." (*Id.* citing 17 U.S.C. § 410(d)). Under the plaintiff's view, Section 410(d) indicates that registration is complete with the filing of the fee, application, and deposit, and Section 410(d) empowers the court to proceed with the case after the copyright applicant makes the basic submission. (Docket No. 12 at 3.)

Plainly, from a statutory interpretation perspective, the defendant has the better of the argument. Sections 411(a), 410(a), and 410(b) all show a clear congressional intent to have the Copyright Office review the materials submitted and pass judgment on their copyrightability before those materials are considered "registered" for purposes of the jurisdictional requirements

11

of Section 411(a). Section 410(d) deals with the "effective date" of a registration, not what it takes for a registration to occur, and multiple provisions of this title clearly demonstrate that registration occurs after a Copyright Office review, not simply by the applicant submitting materials.[4]

That said, numerous courts and the widely cited treatise *Nimmer on Copyright*, take the opposite view, concluding that the court has jurisdiction over an infringement action following the submission of the fee, deposit, and application. *See e.g. Apple Barrel*, 730 F.2d at 386; *Int'l Kitchen Exhaust Cleaning Assoc. v. Power Washers of N. Am.*, 81 F. Supp. 2d 70, 72 (D.D.C. 2000); *Iconbazaar*, 308 F. Supp. 2d at 633-34. Using Section 410(d) as their statutory foundation, the side favoring this "broad," or "application," approach argue that "policy considerations" support their position because, "given that the claimant [after application] has done all that it can do, and will ultimately be allowed to proceed regardless of how the Copyright Office treats the application, it makes little sense to create a period of legal limbo in which suit is barred." (Docket No. 12 at 3, quoting *Nimmer on Copyright* § 7.16(B)(1)(a)(i)).

Indeed, in *Int'l Kitchen*, after noting that courts had come out differently on the issue, the court cited Section 410(d) and *Nimmer* and simply stated that "judicial economy" favored not dismissing the case simply because the plaintiff did not have a registration certificate from the Copyright Office. 81 F. Supp. 2d at 72. A similar approach, that is, discounting the language of Sections 410(a), 410(b), and 411(a), focusing on Section 410(d) and arguing that the registration

---

[4]Further, it would be inappropriate to conclude that Section 410(d) indicates that this court is "a court of competent jurisdiction" with the power to register copyright materials, as that is simply inconsistent with the copyright registration scheme established by the Copyright Act, in which the applicant submits materials to the Copyright Office, which registers the copyright or rejects registration.

12

process is of little import because the "owner of the work may bring suit even if his copyright application is denied" is also found in the *Iconbazaar* case, along with most cases taking this "broad" view. 308 F. Supp. 2d at 634.

To the court, the recent decisions of other district courts in this circuit are more soundly reasoned and should be followed. Plainly, the courts in *Int'l Kitchen* and *Iconbazaar* have correctly recognized that there is something "uneconomic" about dismissing a complaint simply because the plaintiff does not have a certificate of registration, especially when the plaintiff, under Section 411(a), will be allowed to sue even if the Copyright Office denies the registration and refuses to issue the certificate. But, as the courts of this circuit have recognized, it is the role of the courts to "interpret a statute to give effect to each clause, sentence, and word so that none is rendered superfluous or surplusage." *Ripple Junction*, 2005 WL 2206220, at * 4 (citing *U.S. v. Perry*, 360 F.3d 519, 537 (6th Cir. 2004)). To read the statute to mean that registration occurs when the applicant files his materials would be to misread and render superfluous numerous provisions of the Copyright Act, perhaps most notably Section 411(a), which provides the procedure for how a lawsuit may still be filed even if registration is refused by the Copyright Office. *Id.*

Plainly, Congress intended a scheme in which, before an entity could sue on a claim of copyright infringement, the Copyright Office would be entitled to pass, in an essentially non-binding manner, on the vitality of the copyright.[5] Obviously such a system will cause some

---

[5] Courts that adopt the "registration," or "narrow," approach do not agree as to when exactly "registration" occurs. *See La Resolana Architects*, 416 F.3d at 1202-03 (discussing that some courts find that "registration" occurs when the certificate of registration is obtained by the applicant, and others find that registration occurs whenever the Copyright Office passes on the copyrightability of the materials, "however [the registration] is demonstrated.") It is not

13

inevitable delays in litigation, but Congress apparently felt those delays were worth the benefit of the Copyright Office having an initial chance to pass judgment.[6]

Where the court is called upon to interpret the language of a statute, and that language is clear, as it is here, it is simply the role of the courts to enforce that language. *Hoge v. Honda of Am. Manufacturing, Inc.*, 384 F.3d 238, 247 (6th Cir. 2004). Because the defendant's copyrights have not been "registered" as that term is used in the Copyright Act, the court does not have jurisdiction over copyright infringement claims related to those copyrights, and that includes the "anticipatory" declaratory judgment action advanced here by the plaintiff. Therefore, the plaintiff's Complaint will be dismissed. It is therefore not necessary to consider the parties' arguments regarding whether declaratory relief is generally appropriate in this case, under the standard provided in *Grand Trunk Western Railroad Co. v. Consolidated Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)[7]

---

necessary to resolve this issue here, because there is no dispute that the Copyright Office has not passed on the copyrightability of the materials.

[6]The plaintiff argues that this interpretation places it in "legal limbo, uncertain whether continued hosting of its website will subject plaintiff to actual and exceptional damages for the 'willful' infringement defendant complains about in its demand letters. ... Further, although defendant takes the narrow approach now, there is nothing ... that would have prevented defendant from taking the broad approach and suing first. Plaintiff truly was stuck between a rock and a hard place." (Docket No. 12 at 3-4.) The plaintiff is not the only party in "legal limbo"; rather, as dictated by the case law discussed herein, both sides are precluded from suing until the Copyright Office passes on the defendant's submissions. Plainly, both sides bear the costs of this scheme.

[7] In its brief in support of its motion to dismiss, the defendant states "this suit should be dismissed and a hearing should be set to determine an award of reasonable attorney's fees pursuant to 17 U.S.C. § 505." (Docket No. 6 at 1.) Section 505 of the Copyright Act provides that "the court may also award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. While the court has discretion to award such fees to the prevailing party, those fees are only properly awarded to a defendant where the claim asserted is

14

Case 3:09-cv-00112 Document 16 Filed 05/18/09 Page 14 of 15 PageID #: 411

## **CONCLUSION**

For the reasons discussed herein, the Institute's Motion to Dismiss will be granted and this case will be dismissed (without prejudice) for lack of subject matter jurisdiction.

An appropriate order will enter.

_____
ALETA A. TRAUGER
United States District Judge

---

"frivolous," driven by improper motives, or "objectively unreasonable." *Fogerty v. MGM Holdings Group Corp., Inc.*, 379 F.3d 348, 357 (6th Cir. 2004). Under this standard, attorney's fees for the defendant are plainly not appropriate. As discussed herein, courts have split on the definition of "registration," and there is no controlling Sixth Circuit precedent. Further, there is scant case law on whether an accused infringer can proceed with a declaratory judgment action absent registration. For the plaintiff to assert this claim was hardly "frivolous" or "objectively unreasonable."

15